please and counsel can go ahead and approach case number 14-1092 the United States of America v. Anmy Tran and case number 14-1569 United States of America v. Miteshkumar Patel or arguments not to exceed 10 minutes for each defendant 20 minutes for plaintiff D-Day Lorraine for Anmy Tran. Judge Cook, Judge Keith, Judge Donald I'd like to reserve three of my ten minutes I want to talk briefly about the two evidentiary issues that we raised but focus on the sentencing issue the third issue in the brief it it it's as to the the drug profile evidence or the practice profile evidence. This is strikes me as qualitatively different from the kind of evidence that this court allowed in Weinstock because Weinstock was pretty neutral I mean you're talking about a a foot a procedure of to be being performed on a person's foot here you have evidence that the that if believed by the jury would suggest that Dr. Tran was pumping huge quantities of very dangerous drugs much abused drugs drugs which have been the subject of a great deal of public attention and which which were the subject of a good deal of testimony at trial into the community and I think that that this broad this broad sweep of highly inflammatory evidence but the import of that evidence or the nature of it you want to say bears on it but it's just statistics it's because it's statistics about some horrid drugs that the public doesn't appreciate well it's affect the the the admissibility of statistical evidence should it well I I think that's exactly what rule 403 calls for whether the this this whether the evidence has the potential to suggest a decision on an improper basis that is the revulsion about this was this was a abuse of discretion call right it would be that although the trial judge didn't really explain his the is just his is on the appellant to show an abuse of discretion yes I understand that yeah so without explanation you still can say what you're saying that's it's yes inflammatory topic and the statistical evidence should have been excluded for that reason because dr. Tram will stand behind the podium just like that way dr. Tram was on trial for a discreet set of actions this evidence calls into question as any such evidence would the entire universe of her conduct whether it was charged or uncharged but it draws the jury's attention in a very graphic and I think inflammatory way to but the entire this the so-called conspiracy concerns serious and in inflaming drug activity it's true but and how will we get around that by eliminating the statistical evidence from the mix dr. Tran had the opportunity to respond to the precise allegations made in the indictment she could and did have a another podiatrist look over charts of patients who were identified in the evidence as having been improperly treated and could respond to the suggestion and and she did present evidence that's it from a physician whether it was believed or not by the jury that her treatment of these patients of the patients identified patients was proper now we are opening up a the entire field the entire area of her of her conduct in a way that really defies defies response let me just ask you at this juncture are you complaining primarily about the admission of that statistical evidence or I mean at the at the trial level or are you looking are you now complaining that we should look at this evidence that you say is inadmissible and cabin some of that with respect to the loss calculations what are you going on to two different tracks it's a different argument okay right so you're focusing on the admissibility right now at trial all I'm talking about now is the admissibility of these charts that showed that dr. Tran prescribed five times as much hydrocodone as the the first doctor who was not associated with her practice that's all I'm talking about now but I'd like to move to the next slide if I might the the I'm sorry the basic problem with the set with the judge with the courts the district courts law calculation of loss and drug quantities is that it was not tethered it wasn't supported by anything in the evidence it was simply arbitrary the adopted the PSR yes and the PSR I take that's the grounds for your dispute that the PSR adopted whole in whole cloth doesn't it's unfair it was the government it was the government's as I understand it it was the government's position that this would be the appropriate loss calculation yet at sentencing the government acknowledged that it was quote impossible to parse out which of the prescriptions that dr. Tran had had written were proper and improper and also acknowledged that it was adopting the position that fifty percent of was fifty percent of the office calls billings for office calls should be held to have been improper and fraudulent even though all the best that the government could say was that some of them were so fifty percent seemed fair well maybe it was fair maybe it wasn't fair but it wasn't tethered to the evidence and that's what laws calculations and drug quantities have to be the there were there would have been ways there have been ways short what would the what do you know it's obviously a conundrum to sort it out but how do you think there were ways to do it here's one easy way you take a I'm sorry judge you take a reasonable fair sample a week a month and you have a few have an expert go through all of the availability of the evidence of all the available evidence charts patient statements whatever whatever information is available and you get a an informed inference and as to what percentage of the prescriptions should not have been written and what or what percentage of the office calls you would you as defense counsel would accept a sampling sure that was supported evidentiary because the case law accepts sampling and and your time has expired on it is that all your time no I have three more minutes all right thank you good morning Elizabeth Jacobs representing my test Kumar Patel after I essentially that has to do with the search warrant I'm sorry the application for the title three wiretaps after the filing of the brief a different panel of this court decided USA versus Baba Hi Patel and in that case based on the same application they upheld the application however that's an unpublished opinion so it's not binding precedent on this court so I'm going to continue with my I want to look at I would like to bring to the court's attention three cases in a continuum and the first one would be the rice case the second one is Alfani and the third case is this case and if you look at this as an investigative continuum you can see what is needed in order to obtain an app in order to obtain a wiretap in rice the one at the low end that application only offered boilerplate language and very clearly that investigation had not started and that application was was properly denied in the middle is Alfani Alfani is an interesting case it's the one that talks about strict compliance with with the title three requirements in Alfani it's a narcotics case in the the mafia the are in New York and you have people in Detroit and people in Chicago and they're talking to each other but all the all the government is able to use our pen recorders they can't they don't know what's being said in the particular in the particular phone calls and they've got surveillance they went to the court and they said this is all we've got we can see them exchanging paper bags we don't know what's in the paper bags we suspect that there's a can and we also don't we have people that are scared to talk to us and scared to wear a wire at that point the court said this is enough you've shown a necessity you've investigated and you've tried to develop a case you've tried to develop evidence and it's not proved successful and doesn't look it's going to prove successful then on the other end and Alfani of course is the sweet spot it's the spot where you would get the application then there's our case in this particular case there was no necessity to issue the application this is said this is such an interesting case because you start out you've already got mr. big baba hi Patel is actually confiding in a confidential source that's being run by the government it's the complete opposite of all the cases that we're more familiar with where you start with a foot soldier and you try and work your way up so you've got mr. big and you've got two confidential informants one is still working with the with mr. Patel one kind of comes in and out of the of the of the picture you've got agents that are going in undercover agents that are going in and appearing as either doctors or they're appearing as marketeers to recruit people or as patients so you have a very active investigation going on there at the time that they upon the government applies for a wiretap one of the things they says is they they state is that mr. Patel did not want to talk to we weren't able to have mr. Patel hook up with our imaginary doctor what the government is doing in in this fomenting government created crime it isn't exposing any larger organization all that's doing is bringing people in that it already knows what's going to happen but it's not exposing it and the wiretap wasn't going to expose it so I would suggest to you in this case that there is no necessity there was no necessity shown the third of course part of necessity is that someone was there's no there's no indication that there's any danger to anybody trying to infiltrate their organization the government claims that we tried trash pulls and it didn't work well a trash pull revealed some efforts does that not undercut your argument somewhat there were some efforts and the efforts only go to show that this investigation was being successful that they didn't need to resort to wiretaps which is so intrusive so you don't get to you don't get to go and get a wiretap just because you know what we've done this and we want to do a little more it's only if you are really stopped in your tracks but they had the names of 35 people from the from the the trash pull they had the name of 21 possible pharmacies that they could be investigating and instead they were going to do a shortcut and go and get the wiretap so we would suggest to you that there's no necessity shown that this was not a stalled investigation the only stalling is that Mr. Patel and again Babahi Patel is not my client my client is Matish Kumar Patel and they're not related is that Babahi Patel didn't want to meet the imaginary doctor it's not like you're exposing more crime we're only exposing the government's what the government is trying to do I also want to talk about the standard that's used to analyze this in this in this Sixth Circuit it's great deference to the issuing magistrate and to the judge that reviews it and I would suggest to this court that because title three requires strict compliance that great deference is kind of a should adopt the DC Circuit's test which is careful scrutiny and I would suggest that now is the time to do it in light of the fact that we have evolving technology we have GPS we've got the cell phone case California versus Riley and now we have this case where you're just you're not just talking on a phone you've got the government the cell phone tap it's in your pocket 24-7 so the law has to keep up with technology and Justice Alito referred to this in his concurring opinion in California versus Riley where he says we have to reconfigure the balance of interest between like between law enforcement and an individual's right for privacy so I would ask the court to carefully consider the warrant and carefully to reconsider the kind of standard that we use are there any questions it appears there are not but miss Jacobs the court thanks you for your for your work on under the criminal justice thank you you have three minutes I think do you okay you might get that good morning may it please the court I'm Wayne F Pratt appearing on behalf of the United States judge Keith you have anything to argue on the Patel case do you intend to honor it's like I think the first panel in the opinion written by judge drag stranches worth is worth some deference I understand that it isn't technically binding on this court it's persuasive authority to this that that's what we would argue and and certainly in terms of the other investigative techniques by the time we got to the final application there were 30 pages that talked about the surveillance attempts that were unsuccessful the litany of things and so I think the government I think we can rest on our brief on that I'd like to address the sentencing question for dr. Tran and specifically the question of where did this 50% of the controlled substances come from that calculation and it wasn't 50% of all the controlled substances it was just 50% of the schedule 3 hydrocodone and what happened was in government's exhibit 28 which is actually part of the statistical evidence that's the subject of the first issue it showed that as to a Medicare defendants the defendant had defendant Tran had prescribed more than twice as much as the second closest person podiatrist in the entire state of Michigan in other words you could take away 50% of what she prescribed and she still would have been number one and she still would have to agree with with my assessment that that's pretty evidence I thought that the PSR the district court just adopted the PSR in in total did it did it not with respect to that well it did but sometimes the PSR is her right I get lots of times they're right they are but in this case I'm wondering about the evidentiary basis for that and I'm trying to say the evidentiary basis is if if she prescribes more than twice as much you take 50% away she's still number one in the entire state and the only person she's higher than slightly higher than at that point is her partner in the interesting comparison with her partner there was testimony that her partner's controlled substance statistics would have been inflated because when dr. Tran wasn't available and dr. trans patients came in dr. Lee testified well I'll just write them whatever she's been writing for them so you have a situation where do you see another case where it's sort of a taint matter and we just say you know sort of gauge there's a basis for the 50% I grant you that but it is the government's burden to come forward first with proof before before the defendant can come forward with defend on which those services were what's the value well and I guess what I want to say on that is that we're not just talking about taking 50% off in the abstract because here we had it again at trial we had a couple of the pharmacists that were filling these prescriptions in the pharmacy if you can call it that it was probably small it was smaller than this bench but it was a pharmacy located within the defendant's office and the two pharmacists who work there testified and said basically they didn't use these pill mill that all the patients want is controlled substances the statistics show that 85% of the people she wrote got got controlled substances and the pharmacist testified these people didn't even want the non-controlled substances all they cared about was the hydrocodone the cough syrup the muscle relaxers and so you had from the pharmacist perspective and so when you say saying essentially the vast majority of what she's writing is just going out the door to these people that want the control drugs so here's where you have the actual testimony from the pharmacist who are seeing the prescriptions it gives a basis to say far more than half of it would have been people that were just there for the drugs and of course the way they also testified that the way the scheme worked is that you had to get people in there who wanted the drugs and then while the people were getting their drugs that they could use or sell why then they would add on these non-controlled drugs which Dr. Tran would also prescribe and that way the pharmacy could make a lot of extra money on the expense of non-controlled drugs and the reason she would do this was she was being paid bribes and kickbacks by the pharmacy owner that owned it and so this isn't a situation where the government just proves a couple of unlawful distributions and then says let's take 50% off the top rather it's a case where the trial judge sat through the trial and he sat through not only this trial but through at this point four trials on this indictment and he heard the cooperating pharmacists say the patients were just there for the drugs he saw that 85% of the patients get drugs so that it was largely illicit he was being paid tens of thousands of dollars in kickbacks. I want to ask you kind of going back to a point you talked about before and as Judge Cook mentioned the district judge adopted the PSR which is not uncommon but was the court was the district court required to make particularized findings on the loss calculation amount where Dr. Tran specifically requested findings and she didn't get those particularized findings except for whatever was in the pre-sentence report was there was there a requirement for the judge to do more in the face of that request? Well I think in this case it was pretty clear that as to the loss amount and here we're talking about the loss amount is divided on two things it's divided 50% of the patient visits and then as to the drugs that were filled at the pharmacies it was a hundred percent of that loss and so I can I can indicate that there was no need for particularized particularized finding as to the drug amounts at pharmacies because it's very clear if the drug amounts are being caused by kickbacks under the Medicare agreement you pay zero dollars on that and that's in the agreement it was in the it's in the Medicare regulations and there was a stipulation entered in this kickback Medicare doesn't pay for it and so I sort of I've been trying to think an analogy to that I mean they say well come on some of those must have been legitimate but contractually essentially you've agreed that if you take a kickback those are going to be worth zero dollars it's really no different and I certainly wouldn't claim that about my esteemed counsel here but suppose suppose a defense attorney had decided to defend a defendant at a criminal trial and they were going to defend it for $100,000 but suppose they wrote in an agreement by the way if you intentionally engage in a conflict of interest then you get zero dollars for defending this trial well unbeknownst to the defendant the defense attorney takes $50,000 from for example one of the government's cooperating witnesses to go easy on the cross-examination on me because I want to look really good and get a good sentence reduction how much has the criminal defendant been defrauded by defense attorneys engaging in a conflict of interest defense jury can say I did an opening statement and I cross-examined other witnesses the point okay so contractually the value is zero and so you don't need a particular eyes finding of let's find that this was a good prescription this one was a bad prescription because contractually the mouse is zero the Washington case the dr. Washington case says once you've of course the burden shifts to them to show that the government had some kind of value I don't know how you can have a value when you essentially have a conflict of interest case if the contract was for a hundred automobiles and someone like sometimes happens in commercial cases a fleet of automobiles somebody adds on there any similar perhaps you've cited it but right now I can't think but is there a similar case where you could that you could point to that would aid this court in in buying that argument that really just really just the Washington case because in the dr. Washington case they actually made a video they actually gave the city of Detroit public schools something but the fact does it was made under a kickback arrangement and in that in that sense and the burden was on the defendant to show what's the value of what you got and and and no I can't point something to the court that says the value of of medical services or products rendered under a conflict of interest now you wouldn't is zero we'll look at all right and to Washington and I guess that does feed into the government's harmless error argument because when you get to the amounts of fraud the adoption of the district court was of the four point two million dollars amount because of the multiple count rules assuming the court accepts the the hydrocodone and the control substance amount it would have to go below 400,000 before it would actually make any difference in terms of in terms of the defendants in terms of the defendant's sentencing calculations and so the government believes certainly I think it makes the job easier for the court and it makes it easier frankly for the government when the district court goes through and explicitly adopts and rejects findings but I think here because the trial testimony is pretty clear that the partner was the one that had 50% of the hydrocodone it's pretty clear and and that's pretty much what we based it on there and that the and that in terms of the loss amount it's pretty clear that if you pay it under a kickback you don't the amount due is zero then that the amount of fraud is the entire amount paid I didn't know if the court had any questions on either the other evidentiary issues but you know if the court doesn't ask we'll ask anyone okay we think that Weinstock controls on the statistical evidence it's hard to say that a jury is not entitled to know the setting of the case the entire conspiracy of the statistics were within the entire scope of the conspiracy charged in this indictment that's clear couldn't hide this matter this fact it's just not it's the heart of the case well it is and to say that we have cooperating witnesses that say that the whole part of the scheme was to put out a large amount of controlled substances and add on a lot of unnecessary non-controlled and then not to introduce those statistics would really be an incredible blow to the government's case because frankly you'd expect that because that essentially if you don't have that then the question is are these cooperators telling the truth you've dealt with that sufficiently in a brief okay thank you if I may it is my unfortunate it's my fate it seems to be confronted with all the cases that I've lost and Washington was one of those cases that the thing that makes Washington different from this case it and and inapplicable to it is that in Washington the testimony was the jury's found that miss Washington had acquired the contract through unlawful act through bribery and it had it not been it the judge the court there was perfectly perfectly logically concluded that had she not acquired the contract she had she not committed the unlawful act the bribery she never would have gotten a penny so the value of the services that the court then held if it would devolve upon the defendant to show that there was some offset against this loss but it was all a loss because none of this these payments would have been made had she not committed the crime of which she was convicted that's what I understand that case to be about here it's something different here the trying to award and judge Posner's phrase bonus penalty points and the government doesn't have to do it exactly doesn't have to do it with precision but has to do it in some way that it's not arbitrary notwithstanding the its protestations that it's trying to be fair and reasonable the the problem with Mr. Pratt's Mr. Pratt's argument about the kickbacks is that the stipulation at insurers I'm quoting will not knowingly reimburse providers for goods and services which are medically unnecessarily unnecessary not actually provided or induced through payment of a kickback or a bribe so there's a causation requirement it's not a conflict of interest provision it's a causation provision and in this case Dr. Tran testified and I think without contradiction that the majority of her patients had nothing to do with Abhai Patel or the Patel organization it was incumbent under those circumstances for the government to show not that she was laboring under a conflict of interest but that she had been that that she was induced by virtue of this kickback arrangement which the government charged and proved to have done something improper and that it was not tethered to a half of the wasn't tethered to anything that's my argument thank you very much for your time and attention thank you for your argument miss Jacobs in this much as the government's rested on its brief we there you go yes sorry for that but you know what we do really appreciate your your efforts here and it aids the court so that will will adjourn court